IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-974 |
| | : | |
| DANIEL SILVERMAN, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **December 16, 2013**

Plaintiff James Williams brings this action pursuant to 42 U.S.C. § 1983, alleging violations

of his constitutional rights during his time as a prisoner at Lehigh County Prison (LCP) by

several Defendants, including Lehigh County Prison Warden Dale Meisel, Deputy Warden

Nancy Afflerbach, Correctional Officer Nat Carrion, and Sheriff Ronald Rossi in their individual

and official capacities.[1] Defendants have filed a motion to dismiss for failure to state a claim, and

for the reasons set forth below, this motion will be granted.

## BACKGROUND

On August 21, 2001, Williams was convicted in the Lehigh County Court of Common Pleas

of first degree murder, robbery, and conspiracy to commit robbery. He was sentenced to death.

On April 21, 2006, the Pennsylvania Supreme Court affirmed his conviction. Williams was

incarcerated at LCP during both his initial trial and the pendency of his postconviction claims,

and he now asserts several claims arising out of his stay at LCP.[2]

---

[1] After his original Complaint was dismissed with leave to amend on May 29, 2012, Williams filed an Amended Complaint on July 5, 2012. The Court considers this Amended Complaint to be the operative complaint in this case. *Cf. Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 706 n.2 (1982) ("It is the complaint which defines the nature of an action, and once accepted, an amended complaint replaces the original.").

[2] By Order of January 17, 2013, this Court dismissed Williams's claims against Defendant Daniel Silverman, and by Order of September 17, 2013, this Court dismissed as futile Williams's

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). Where, as here, the plaintiff is proceeding pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009).

When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because it is not clear that amendment would be futile as to Williams's claims against Deputy Warden Afflerbach for interference with his access to the courts, violation of his procedural due process rights, and conspiracy, against Officer Carrion for interference with his access to the courts and retaliation, and against Warden Meisel for interference with mail, Williams's § 1983 claim will be dismissed without prejudice

amendments to his Amended Complaint, asserting a failure-to-protect claim against Defendants Meisel and Afflerbach.

to Williams's right to file an amended complaint which cures the deficiencies identified herein as to those claims. However, Williams's claims against Officer Carrion for sexual abuse and failure to protect, against Sheriff Rossi for excessive force, and against the LCP staff for verbal harassment will be dismissed with prejudice and may not be reasserted.

### A.  Claims Against Deputy Warden Afflerbach

Williams asserts Deputy Warden Afflerbach was engaged in a conspiracy with a Lehigh County First Assistant District Attorney (ADA) whereby Afflerbach would steal information from Williams's prison cell about his defense strategies (by confiscating his papers and/or planting informants in his cell) and then share this information with the ADA to sabotage his defense. Although Williams only discovered the conspiracy in August 2011, he claims it began in October 1999, during his original court proceedings and continued throughout his federal habeas proceedings from December 2010 to April 2012. Specifically, Williams alleges that on March 15, 2011, a prosecutor used a stolen defense document during a hearing on his federal habeas petition, and in July 2011, Afflerbach raided Williams's cell and confiscated all of his legal materials, including notes relating to the scheduled cross-examination of Afflerbach and the ADA.[3]

Williams does not specify which of his constitutional rights Afflerbach allegedly violated, but based on the facts asserted, there are three possible claims: (1) denial of access to the courts,

---

[3] In support of his conspiracy claim against Afflerbach, Williams submitted a letter written by inmate Louis Washington to the ADA in July 2000, in which Washington explains that Williams has listed him as a witness for Williams's criminal trial because Williams thinks Washington will testify on his behalf. Washington then offers to trick Williams and testify to the "truth" once he is on the stand. Am. Compl. Ex. 4(c), ECF 9. Williams also submitted an affidavit from Washington, written eight years later, in which Washington claims that after he spoke with the ADA, "a strategy was formed to get James to call me as a witness and for me to surprise him and make him look like a fool and a liar." *Id.* Ex. 4(b). These two pieces of evidence do not implicate Afflerbach, and thus does not provide support Williams's conspiracy claims against her.

(2) denial of procedural due process, and (3) conspiracy. All, however, will be dismissed as meritless.

First, Williams fails to allege a plausible claim of denial of access to the courts. Prisoners have a fundamental right of access to the courts, but to establish a claim of interference with such a right, the inmate must demonstrate "actual injury" and show that the alleged violation "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *id.* at 353 (explaining the inmate must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded" due to the alleged act (footnotes omitted)). "Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3. As a result of the defendant's actions, the plaintiff must have lost the ability to present either a claim challenging the validity of his sentence on direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. *Id.* at 355.

In *Monroe v. Beard*, the Third Circuit affirmed the dismissal of an access to the courts claim in which inmates alleged prison officials seized their legal materials. 536 F.3d 198, 206 (3d Cir. 2008). The Court found the plaintiffs' claim "rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike." *Id.* Even though the plaintiffs "alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims" they "did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims." *Id.*

Similarly, in this case, even accepting Williams's allegations as true, he fails to show how confiscation of his legal documents prevented him from successfully presenting a nonfrivolous claim. First, Williams alleges Afflerbach seized documents from his cell during his criminal trial

and subsequent legal proceedings (presumably in addition to the July 2011 raid he specifically describes in his Amended Complaint), but he does not assert that, as a result, he was prevented from defending his case or suffered any detriment. Second, even if the prosecutor in his habeas hearing used a stolen defense document, Williams has not demonstrated he was asserting a nonfrivolous claim or explained how the prosecutor's reliance on that document frustrated the presentation of his case. Lastly, Williams has not shown how the theft of his cross-examination notes in the July 2011 raid impeded the presentation of his habeas petition. Because Williams has not demonstrated he was prevented from pursuing his legal claims, his access to courts claim will be dismissed without prejudice to reassertion.

Williams also fails to allege a plausible procedural due process claim. To establish a procedural due process violation, the plaintiff must demonstrate "there exists a liberty or property interest which has been interfered with by the State" and "the procedures attendant upon that deprivation were [not] constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*"); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) ("Once we determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." (internal citations omitted)). In the prison context, if officials take property from a prisoner and the deprivation is not pursuant to some established state procedure, there is no violation of procedural due process as long as there is an adequate postdeprivation remedy, i.e., the only process due is the postdeprivation remedy. *See e.g.*, *Parratt v. Taylor*, 451 U.S. 527, 541-43 (1981), *overruled on other grounds by Daniels*

*v. Williams*, 474 U.S. 327, 330-31 (1986). This reasoning applies to both negligent and intentional deprivations of property. *Hudson v. Palmer*, 468 U.S. 517, 533 (1983).

Williams has not established that he did not receive an adequate postdeprivation remedy regarding the confiscation of his legal papers, and therefore, he has not demonstrated a violation of his procedural due process rights. The LCP utilizes a grievance procedure for inmate complaints. Williams claims although he filed many grievances through the grievance procedure at LCP about Afflerbach's actions, his grievances were either ignored or summarily denied. He also claims he was forced to direct his grievances about Afflerbach to Afflerbach, which is a conflict of interest. His conclusory allegations do not establish violations of due process. First, simply because he did not prevail in the grievance procedure does not mean the procedure was inadequate. *Austin v. Lehman*, 893 F. Supp. 448, 454 n.4 (E.D. Pa. 1995) ("The fact that Plaintiff did not receive the result he desired from the [prison] grievance procedure does not mean that he was denied due process." (quoting *Jackson v. Cent. N.M. Corr. Facility*, 976 F.2d 740 (10th Cir. 1992) (unpublished opinion)). Second, Williams does not provide copies of the "summarily denied" grievances, nor does he give any details about grievances he filed that received no response.[4] Thus, Williams has failed to state a plausible procedural due process claim, and the claim will be denied without prejudice.[5]

---

[4] Williams did provide the Court with many grievances he filed for other issues. Warden Meisel reviewed these complaints and responded to them fully. *See, e.g.*, Am. Compl. Exs. 2, 6, 6(a), 6(b), 8, ECF 9. Thus, it appears that LCP provides Williams with copies of his grievances and that Williams received adequate review these issues. These documents also demonstrate Warden Meisel, and not Afflerbach, review Williams's grievances. Williams has not provided copies of any grievances he filed concerning the deprivation of his property; thus, the Court is not persuaded that Williams used the grievance procedure or that Afflerbach, and not Meisel, reviewed the grievances.

[5] As noted above, even if Afflerbach did take documents from Williams's cell, the remedy required is simply a postdeprivation process like a grievance procedure or a hearing. Defendants

Lastly, Williams's conspiracy claim fails because he has not sufficiently alleged a violation of any rights. To establish a civil conspiracy claim under § 1983, there must be an underlying federal civil rights violation. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant."). As explained above, Williams has failed to establish either denial of access to the courts or violation of procedural due process; therefore, he cannot establish a conspiracy existed, and this claim will be denied without prejudice to reassertion.

**B.  Claims Against Correctional Officer Carrion**

Williams alleges claims against Officer Carrion for (1) sexual abuse, (2) retaliation, (3) confiscation of legal documents, and (4) failure to protect. Williams's claims of sexual abuse and failure to protect will be dismissed with prejudice, but his claims for retaliation and confiscation of legal documents may be reasserted if he cures the pleading deficiencies.

First, Williams alleges that on July 15, 2011, Officer Carrion fondled his penis and genitals under the guise of patting him down in violation of the Eighth Amendment's prohibition of cruel and unusual punishments. "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). To state a cognizable Eighth Amendment claim, a prisoner must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious," and (2) the prison official causing the deprivation must have a "sufficiently culpable state of mind." *Id.* at 834 (internal citations and quotation marks omitted). "In prison-

---

need only demonstrate Williams received an adequate postdeprivation remedy to defend against this claim.

conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (citations and internal quotation marks omitted).

While severe or repetitive sexual abuse of an inmate by a prison official can violate the Eighth Amendment, isolated incidents of inappropriate conduct by prison officials generally do not infringe upon an inmate's constitutional rights. *See Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (holding that a single pat-down frisk in which a correctional officer allegedly touched prisoner-plaintiff's testicles through his clothing, with no allegation that any sexual comments were made during the frisk, did not rise to level of Eighth Amendment violation); *Wolfe v. Beard*, No. 10-2566, 2013 WL 2370572, at *12 (E.D. Pa. May 31, 2013) (finding a prisoner-plaintiff's claims that a correctional officer rubbed her breasts during a pat-down search did not violate any constitutional rights in light of "the fact that other courts within this circuit have determined that a frisking officer's contact with an inmate's genitals or private areas during a single pat-down search is insufficient to constitute an Eighth Amendment violation"); *Watson v. Beard*, No. 09-87, 2013 WL 4648323, at *11 (W.D. Pa. Aug. 28, 2013) ("Plaintiff's allegation that his genitals were "massaged" or "squeezed" during what were otherwise normal, routine pat-down searches conducted as a consequence to his kitchen job is simply insufficient to establish an Eighth Amendment violation, particularly given the fact that touching of the groin area over clothing during a pat-down search would be necessary in order to look for food and other kitchen items."); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (explaining a brief unwanted touch on plaintiff's buttocks by prison employees that was not accompanied by sexual comments or banter was insufficient to state a claim under the Eighth Amendment); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (holding plaintiff failed to state an Eighth Amendment claim because he asserted only a small number of incidents in which he was "he

was verbally harassed, touched and pressed against without his consent," and no single incident was severe enough to rise to the level of an Eighth Amendment violation).

In this case, Williams alleges one instance of improper touching by Officer Carrion during a pat-down. Although Williams asserts Officer Carrion threatened him in the past with sexual remarks, this single physical incident, while despicable, is not sufficiently serious enough to satisfy the objective element of the Eighth Amendment standard. Therefore, amendment would be futile and this claim will be dismissed with prejudice.

Next, Williams alleges that Officer Carrion retaliated against him by turning away family members who came to visit him at LCP. "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). To establish a claim for retaliation, a prisoner must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation and internal quotation marks omitted). Here, Williams does not allege Officer Carrion cancelled the family visitation in retaliation for Williams's exercise of a constitutionally protected right; therefore, Williams has not alleged a cognizable § 1983 claim for retaliation, and this claim will be dismissed without prejudice to reassertion.

Williams also alleges that on April 16, 2012, Officer Carrion confiscated legal documents from his cell and read them, and the documents were later returned to Williams by another prison official. As explained above, to establish a claim of interference with access to the courts, the

inmate must demonstrate "actual injury" and show that the "alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. Williams claims only that Officer Carrion confiscated and read his legal documents. He does explain how that act caused him injury or prevented him from asserting a claim in court. Therefore, Williams's claim based on Officer Carrion's confiscation of his legal documents will be dismissed without prejudice to reassertion.[6]

Lastly, Williams claims that Officer Carrion provided favors to another inmate, Dennis Velez, after Velez assaulted Williams on May 22, 2012. The Court construes this allegation a failure-to-protect claim. Prison officials may be liable under § 1983 for failing to protect an inmate from assault by another prisoner if the plaintiff demonstrates (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the defendant prison officials acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In his Amended Complaint, Williams does not allege that Officer Carrion conspired with Velez or took part in the assault; instead, he asserts that Officer Carrion rewarded Velez after the attack took place. This "reward," if true, does not indicate Officer Carrion was deliberately indifferent to Williams's safety, especially since it occurred after the assault. Williams does not allege any facts suggesting Officer Carrion believed, or even had a reason to believe, Williams was in danger of being assaulted by inmate Velez. In fact, about a month after the attack, Warden

---

[6] To the extent Williams asserts a violation of due process claim against Officer Carrion, his claim fails because he admitted his property was returned to him, so he did not suffer any deprivation of property. Even if he did suffer an interference with a liberty or property interest, process is satisfied by the availability of a meaningful postdeprivation remedy. *See Parratt,* 451 U.S. at 543. LCP has a grievance procedure, and Williams does not allege the procedure was inadequate as to his claims against Officer Carrion for confiscation of legal documents.

Meisel denied Williams's appeal concerning a grievance he filed about the attack, explaining that Williams never listed inmate Velez as his enemy. Thus, Carrion had no way of knowing Williams was likely to be assaulted and could not have acted with deliberate indifference. Because such acts are not a violation of constitutional rights, amendment would be futile, and Williams's claims against Officer Carrion for failure to protect will be dismissed with prejudice.

## C.  Claims Against Sheriff Rossi

Williams asserts Eighth Amendment excessive force claims against Sheriff Rossi for requiring him to wear a "stun belt" during his criminal trial in July 2001, and his postconviction proceedings beginning in December 14, 2010. Williams claims Sheriff Rossi's actions caused him unbearable psychological pain in violation of the Eighth Amendment.

In evaluating an Eighth Amendment excessive force claim against a prison official, the relevant inquiry is "not whether a certain quantum of injury was sustain, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). A culpable state of mind requires that "[the officials] were motivated by a desire to inflict unnecessary and wanton pain." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). The extent of the actually injury is not completely irrelevant, but it is just one factor in the determination whether "the use of force could plausibly have been thought necessary in a particular situation." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted). To determine whether the force applied was excessive courts look to several factors including: "1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts

known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks omitted).

In this case, Williams alleges only that Sheriff Rossi fitted Williams with a stun belt, not that he ever actually activated the belt. Merely fitting Williams with a stun belt is arguably not an application of force. Further, even if it was an application of force, Williams does not allege any facts demonstrating Sheriff Rossi acted maliciously or sadistically to cause harm. Therefore, Williams has failed to plead facts from which it can be plausibly inferred that Sheriff Rossi acted with the requisite mental state, and, because amendment would be futile, Williams's claims against Rossi will be dismissed with prejudice.

### D.  Claims Against Warden Meisel

Williams alleges Warden Meisel violated his constitutional rights by labeling his incoming mail as "unauthorized" and misappropriating $3.50 from his account to return the mail. Williams asserts he has received forty notices debiting $3.50 from his account.[7]

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (applying the *Turner* reasonableness standard and holding regulations concerning receipt of subscription publications by federal prison inmates must be reasonably related to legitimate penological interests). Williams states Warden Meisel confiscated his mail because Warden Meisel claimed it was unauthorized. Williams does not establish why these confiscations are

---

[7] Defendants misconstrued Williams's Complaint as alleging only one instance of confiscation.

unjust or unrelated to a penological interest. He also does not explain why charging $3.50 out of his account to return the mail to the sender is a "scam" to misappropriate his funds. His conclusory allegations fail to state claim upon which relief can be granted, and this claim will be dismissed without prejudice to reassertion.

### E.  Claims Against LCP Staff

Lastly, Williams asserts the LCP staff harasses his family when they visit. Specifically, he claims on May 3, 2011, the staff called his fiancé by her first name and told her she was looking good. Williams requests this Court to issue a declaratory judgment that the staff's conduct is disrespectful and unprofessional and direct LCP that this conduct must cease.

Even if the LCP Staff's actions could be considered verbal abuse, a prisoner cannot bring an action under § 1983 for idle threats or gestures. *See Aleem-X v. Westcott,* 347 F. App'x 731, 731 (3d Cir. 2009) ("Verbal abuse of a prisoner, even of the lewd variety alleged here, is not actionable under § 1983."); *Abuhouran v. Acker*, No. 04-2265, 2005 WL 1532496, at *4 (E.D. Pa. June 29, 2005) ("It is well established that . . . verbal harassment . . . standing alone, do[es] not state a constitutional claim."); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."). Here, Williams has not alleged verbal abuse that rises above idle threats. He has not suffered any injury, and the staff's pestering of his fiancé, while distasteful, is not actionable under § 1983. Accordingly, this claim will be dismissed with prejudice.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.